UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| Louise Harris Daddeh, Personal ) | |
| Representative of the Estate of Moses ) | |
| Harris, ) | |
|     *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No. 1:23-CV-13116-GAO |
| ) | |
| Commonwealth of Massachusetts, City of ) | **<u>LEAVE TO FILE GRANTED ON</u>** |
| Lowell, Lowell Police Department Officers ) | **<u>MARCH 12, 2024</u>** |
| John Doe 1, John Doe 2, and John Doe 3, ) | |
| Lowell Fire Department Firefighters John ) | |
| Doe 4 and John Doe 5, Massachusetts State ) | |
| Troopers John Doe 6, John Doe 7, John Doe ) | |
| 8, and John Doe 9, Lowell Police ) | |
| Department Detectives John Doe 10 and ) | |
| John Doe 11, and Massachusetts ) | |
| Environmental Police Officers John Doe 12 ) | |
| and John Doe 13, ) | |
|     *Defendants.* ) | |
| _____ ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY OF LOWELL AND JOHN DOES 1-5, 10-11'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)</u>**

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES ............................................................................................... 4

INTRODUCTION ................................................................................................................ 8

STATEMENT OF FACTS .................................................................................................. 9

LEGAL STANDARD ..........................................................................................................11

ARGUMENT ....................................................................................................................... 12

    I.    The Court should dismiss Plaintiff's constitutional deprivation of rights claims (counts 13-18) brought under 42 U.S.C. § 1983 and M.G.L. c. 12, § 11I ........................................... 12

        A.    Counts 17 and 18 should be dismissed because the Plaintiff has not plausibly alleged Defendant Officer John Doe 1 used excessive force against Mr. Harris ............................. 12

        B.    Officer John Doe 1 is entitled to qualified immunity as to Counts 13, 17, and 18 because even if Harris' Fourth Amendment rights were violated, such a constitutional violation was not clearly established as unconstitutional at the time ................................... 15

        C.    Counts 13-16 should be dismissed because Plaintiff has not plausibly alleged the City, as a municipality, is liable under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978) ......................................................................................................................... 17

    II.    Plaintiff's common law and federal statutory conspiracy claims (counts 10-12) should be dismissed ......................................................................................................................... 20

        A.    Count 10 should be dismissed because the Complaint does not plausibly allege a civil conspiracy to deprive Harris' equal protection rights under 42 U.S.C. § 1985(3) ................ 21

        B.    Plaintiff's common law civil conspiracy claims (counts 11-12) should be dismissed because Plaintiff has not plausibly alleged a conspiracy occurred ...................................... 24

    III.    Plaintiff's intentional torts claims (Counts 3, 6, and 19) must be dismissed ............... 25

        A.    The City of Lowell is immune from liability for intentional torts (counts 3 and 6) under the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2 ...................................................... 25

        B.    The Plaintiff's assault and battery claim against Officer John Doe 1 (count 19) should be dismissed because Harris was not subjected to harmful or offensive contact or was placed in apprehension of an imminent battery ................................................................. 26

C.    The Plaintiff's remaining intentional torts, counts 3 and 6, should be dismissed as to the City's Doe Defendants because the Complaint does not plausibly allege that any of the Defendants engaged in any intentional torts against Harris................................................. 28

IV.    The Plaintiff's various negligence, gross negligence, and recklessness claims against the City and the City's Doe Defendants should be dismissed ................................................. 30

A.    The City's Doe Defendants, as public employees, are immune from Plaintiff's various negligence, gross negligence, and recklessness claims under the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2 ..................................................................................................... 31

B.    Plaintiff's negligence, gross negligence, and recklessness claims against the City should be dismissed because (1) the City is immune under M.G.L. c. 258, § 10(j) and (2) the Complaint does not plausibly allege the City breached a legal duty to prevent Mr. Harris from voluntarily entering the Concord River on his own during a foot pursuit that Mr. Harris started....................................................................................................................................... 32

CONCLUSION................................................................................................................ 37

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1................................. 38

REQUEST FOR ORAL ARGUMENT........................................................................ 38

CERTIFICATE OF SERVICE ..................................................................................... 38

# TABLE OF AUTHORITIES

## CASES

*Anthony H. v. John G.*, 415 Mass. 196, 199 (1993) ..................................................... 30

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)............................................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................... 12, 22, 25

*Audette v. Com.*, 63 Mass. App. Ct. 727, 730 (2005)................................................... 25

*Aulson v. Blanchard*, 83 F.3d 1, 6 (1st Cir. 1996). ...................................................... 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).......................................11, 22, 25

*Berry v. Commerce Insurance Company*, 488 Mass. 633, 636 (2021). ........................ 31

*Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).................................. 18, 19

*Bowman v. Heller*, 420 Mass. 517, 519 n. 2 (1995)..................................................... 29

*Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989)............................................. 13

*California v. Hodari D.*, 499 U.S. 621, 624 (1991) ....................................... 12, 14, 33

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989),.................................... 19, 20

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)..................................................... 17

*Com. v. Stoute*, 422 Mass. 782, 782, 784–88 (1996). .................................................. 14

*Connick v. Thompson*, 563 U.S. 51, 61 (2011). ........................................................... 18

*Dermody v. Utley*, 328 Mass. 209, 211 (1952)............................................................. 36

*Doe I v. City of Northampton*, 659 F.Supp.3d 122, 135–36 (D. Mass. March 6, 2023) ............... 36

*Doe v. Bradshaw*, 2013 WL 5236110, at *14 (D. Mass. Sept. 16, 2013) .................... 36

*Doe v. Dennis Yarmouth Regional School District*, 578 F.Supp.3d 164, 183 (D. Mass. Jan. 4, 2022); ...................... 36

*Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir. 1996), *cert. denied*, 520 U.S. 1210 (1997) .... 13, 14

*Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238, 246 n. 9 (D. Mass. 2010) ..... 31

4

*Gaudette v. Webb*, 362 Mass. 60, 64 n. 2 (1972)..........................................................36

*GGNSC Administrative Services, LLC v. Schrader*, 484 Mass. 181, 189–91 (2020). ................28

*Grajales v. Puerto Rico Ports Authority*, 924 F.Supp.2d 374 (D. P.R. Feb. 21, 2013). ...............23

*Greene v. Phillip Morris USA, Inc.*, 491 Mass. 866, 871 (2023)....................................24

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). ..........................................................23

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). ...........................................................16

*Harrington v. City of Attleboro*, 172 F.Supp.3d 337, 354–55 (D. Mass. 2016) ..........................36

*Horta v. Sullivan*, 4 F.3d 2, 13 (1st Cir. 1993). ...........................................................16

*Jennings v. Jones*, 499 F.3d 2, 10 (1st Cir. 2007)........................................................15

*Jones v. City of Boston*, 752 F.3d 38, 59 (1st Cir. 2014), ...............................................20

*Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010) .................................17

*Kyte v. Philip Morris, Inc.*, 408 Mass. 162, 167 (1990)...................................................24

*Leavitt v. Correctional Medical Services, Inc.*, 645 F.3d 484, 504 (1st Cir. 2011).....................17

*Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) ..............................19

*Malley v. Briggs*, 475 U.S. 335, 341 (1986). ...............................................................16

*McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017) ...............................................16

*Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978)...........................17, 18, 19, 20

*Mullenix v. Luna*, 577 U.S. 7, 11 (2015). ..................................................................16

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011) .........................................12

*Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985).................................................19

*Parker v. Chief Justice for Admin. And Management of Trial Court*, 67 Mass. App. Ct. 174, 180 (2006)...........................................................................................................26, 31

*Perez-Sanchez v. Public Building Authority*, 531 F.3d 104, 107 (1st Cir. 2008) .........................22

*Polay v. McMahon*, 468 Mass. 379, 386 (2014) ........................................................................ 30

*Puopolo v. Weld*, 2001 WL 1525810, at \*3 (Mass. Super. Ct. Sept. 17, 2001) ............................ 29

*Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) .................................................................. 27

*Roman v. Trustees of Tufts College*, 461 Mass. 707, 717–18 (2012). ........................................ 29

*Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) ...................................... 23

*Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016), ................................................................. 18

*Serrano ex rel. v. Mass. Dept. of Social Services*, 22 Mass. L. Rptr. 501, \*12 (Mass. Super. Ct. May 8, 2007), ............................................................................................................................ 27

*Slaven v. Salem*, 386 Mass. 885, 888 (1982) ........................................................................... 34

*Spring v. Geriatric Authy. Of Holyoke*, 394 Mass. 274, 285 (1985) ........................................... 26

*Swanset Development Corp. V. City of Taunton*, 423 Mass. 390, 395 (1996) ............................ 14

*Wodinsky v. Kettenbach*, 86 Mass. App. Ct. 825, 837 (2015). ................................................. 24

*Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017). ....................................................................... 21, 22

## **STATUTES**

42 U.S.C. § 1983 ................................................................................................................ passim

42 U.S.C. § 1985(3) ................................................................................................ 21, 22, 23, 24

M.G.L. c. 12, § 11H ..................................................................................................................... 13

M.G.L. c. 12, § 11I .................................................................................................................. 13, 15

M.G.L. c. 229, § 2(2). .......................................................................................................... passim

M.G.L. c. 229, § 6 ........................................................................................................................ 36

M.G.L. c. 231, § 85X ................................................................................................................... 36

M.G.L. c. 258, § 10 .......................................................................................................... 31, 32, 33

M.G.L. c. 258, § 10(c) ........................................................................................................... 25, 26

M.G.L. c. 258, § 2 ................................................................................................................. passim

**RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 12

**TREATISES**

*Pleading overt acts in suits under 42 U.S.C.A. §§ 1985, 1986*, 6 Fed. Proc., L. Ed. § 11.379..... 23

Prosser and Keaton on The Law of Torts, § 56, at 377 (5th ed. 1984) ........................................ 35

Restatement (Second) of Torts § 13 (1965). ............................................................................. 27

Restatement (Second) of Torts § 314A, cmt. (f) (1965). ....................................................... 34, 35

Restatement (Second) of Torts § 46(2) (1965),.......................................................................... 30

## **INTRODUCTION**

On December 19, 2020 at approximately 2:10 a.m., a Lowell Police Department officer conducted a lawful motor vehicle stop on a reportedly mentally ill suspect, Decedent-Moses Harris, whom Lowell PD had reason to believe was involved in a crime. As alleged in the Complaint, before the officer could say a word, Mr. Harris exited his vehicle and ran from the scene. Mr. Harris ran through a construction zone, while chased by the Lowell PD officer, toward the Concord River in Lowell. The officer lost sight of Mr. Harris as he approached the river. Before the Lowell PD officer caught sight of the suspect, Mr. Harris either intentionally jumped, or accidentally fell, into the frigid Concord River in the mid-December. The officer called dispatch for backup to Mr. Harris' last known location; and an extensive search for the suspect was conducted with the help of at least three police officers, three firefighters, three Massachusetts State Troopers, two K-9 dog units, an Airwing piloted by the Massachusetts State Police, two Lowell Police Department Detectives, and two Massachusetts Environmental Police Officers. Tragically, after searching along the river for two hours, Lowell PD was unable to find the suspect and had to call off the search. Mr. Harris drowned in the frigid Concord River, and his body did not resurface until three months later, on March 7, 2021. These are the facts as alleged in the Complaint, even when accepting all factual allegations as true and accepting all reasonable inferences in the Plaintiff's favor.

The Plaintiff, Loise Harris Daddeh, personal representative of Harris's Estate, alleges that the City of Lowell, and as-of-yet unknown members of the Lowell Police and Fire Departments negligently caused Harris's death and violated Harris's federally protected civil rights. However, the Plaintiff's Complaint fails to state a claim upon which relief can be granted as to the City or *any* of the identified John Doe Defendants the Complaint alleges were employed by the City.

Even accepting all factual allegations as true and accepting all reasonable inferences on Plaintiff's behalf, the City of Lowell and its agents and employees did not breach any legal duties owed to the Plaintiff and none of Harris' constitutional rights were violated. For that reason, the City moves to dismiss all claims brought against the City of Lowell; and the City moves to dismiss all claims against the following individual Doe defendants: Lowell Police Department John Does 1, 2, and 3, Lowell Fire Department John Does 4-5, and Lowell Police Department Detective John Does 10-11 (collectively "the City's Doe Defendants").

## STATEMENT OF FACTS

On December 19, 2020, at 2:15 a.m., Moses Harris was in a parked vehicle at 850 Lawrence Street in Lowell. *See* ECF No. 1, p. 3. At the same time Mr. Harris was parked, Officer John Doe 1, a police officer employed by the Lowell Police Department, travelled to that same parking lot to search for Mr. Harris. *Id.*, at 2-3. The Complaint alleges that the Lowell Police Department's dispatcher received information from Jerytza Montanez, who called 911 about Mr. Harris' alleged involvement in a crime. *Id.*, at 3. The dispatcher warned Officer John Doe 1 that he "should approach Mr. Harris cautiously because he was experiencing symptoms of a mental illness." *Id.*, at 3. After Officer John Doe 1 saw Mr. Harris's vehicle, he parked behind and perpendicular to Harris. *Id.*, at 3. The Complaint does not allege that this traffic stop was unlawful or that Officer John Doe 1 lacked probable cause to stop Mr. Harris at that point. As Officer John Doe 1 notified dispatch that he found the suspect, Mr. Harris opened the front driver's side door of his vehicle, exited, and slowly approached Officer John Doe 1. *Id*.

Perceiving Mr. Harris to be a threat, Officer John Doe 1 withdrew his taser and displayed lasers on the ground in front of Harris. *Id.*, at 4. Mr. Harris turned his body to the left, facing away from Officer John Doe 1, and toward the rear parking lot. *Id*. The parking lot was partially

occupied by a construction zone and the lot was along the Concord River. *Id.* After turning to the left, Mr. Harris raised both of his hands and began walking towards the construction zone. *Id.* Officer John Doe 1 matched Mr. Harris's pace, following closely behind. *Id.* After walking thirty feet from Mr. Harris's vehicle, he began running toward the construction zone, with Officer John Doe 1 pursuing. *Id.* Officer John Doe 1 chased Mr. Harris to the bank of the Concord River and Mr. Harris ended up in the Concord River. *Id.* According to the Complaint, Mr. Harris was "deathly afraid of water and did not know how to swim." *Id.* Officer John Doe 1 then told Lowell PD's dispatcher that he was in a foot chase with Mr. Harris and that Mr. Harris "was in the Concord River." *Id.*, at 4-5. Officer John Doe 1 gave his approximate location near 576 Lawrence Street. *Id.*

Approximately 100 yards along the Lawrence Street side of the Concord River, Officer John Doe 1 lost sight of Mr. Harris. *See* ECF No. 1, p. 5. Officer John Doe 1 told the dispatcher Mr. Harris's last location and his description, which included the articles of clothing Mr. Harris was wearing. Id. After hearing Officer John Doe 1's notification to dispatch, Officer John Doe 2 traced Mr. Harris' path and encountered Officer John Doe 1 along the edge of the Concord River looking for Mr. Harris. Id., at 5. Another Lowell PD marked vehicle, containing Officer John Doe 3, responded to 576 Lawrence Street to help search for Mr. Harris. *Id.* After that, the Lowell Fire Department ("LFD") dispatched a fire engine containing Firefighter John Does 4 and 5. *Id.* Lowell PD also dispatched two of its' detectives, John Does 10 and 11, to aid the search.[1] *Id.*, at 6. The Complaint alleges Officer John Doe 1 "never entered the Concord River

---

[1] Other law enforcement agencies were called as well. The Massachusetts State Police ("MSP") also dispatched three Troopers, identified as John Does 6, 7, and 8, along with two police K-9 units. *Id.*, at 5. The MSP also dispatched an Air Wing, which was piloted by Trooper John Doe 9. *Id.*, at 6. Finally, the Massachusetts Environmental Police ("MEP") dispatched two of its' officers, John Does 12 and 13, to aid in the search. *Id.*

in an attempt to rescue Mr. Harris[.]"[2]  *Id.*, at 5.  The Complaint also alleges that after being

unable to find Mr. Harris for two hours, the City's Doe Defendants called off the search.  *Id.*, at

6.  Mr. Harris was never seen alive again.[3]  *Id.*, at 5.  His body was later discovered on March 7,

2021 in the Merrimack River near Andover, Massachusetts.  *Id.*, at 7.

## LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, this Court must accept all factual

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.

*Langadinos v. American Airlines, Inc.*, 199 F.3d 69, 69 (1st Cir. 2000).  To survive the motion,

the complaint must allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 559 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  *Id.*, at 555.  "The relevant inquiry focuses on the reasonableness of

the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the

complaint."  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).  "[W]here the

---

[2] The Complaint purports to fault Officer John Doe 1 for not entering the Concord River to pull Mr. Harris onto the shore; but the Complaint also states the pursuit occurred during the winter on December 19, 2020 and Officer John Doe 1 lost sight of Mr. Harris before he entered the Concord River.  *See* ECF No. 1, p. 3, 5.

[3] The Complaint also describes a prior search and rescue incident which the Plaintiff alleges "ended differently."  *See* ECF No. 1, p. 6.  As alleged in the Complaint, on January 3, 2018, Raveth Than jumped from the Aiken Street Bridge in Lowell into the Merrimack River.  *See* ECF No. 1, p. 6.  A nearby bystander realized Mr. Than was in the river and called 911 for emergency assistance.  *Id.*  Police and firefighters responded but did not enter the river to rescue Mr. Than. Id.  The rescue crews then requested the MSP Air Wing to assist with Mr. Than's rescue.  *Id.*, at 7.  Troopers in a helicopter lowered it enough that the skids it landed on were underwater while another trooper leaned out of the chopper and grabbed Mr. Than.  *Id.*  MSP's Air Wing crew rushed Mr. Than to Lowell General Hospital where he was treated and, eventually, released.  *Id.* Like Mr. Harris, Mr. Than could not swim. But unlike Mr. Harris, Mr. Than was able to float near the surface of the river, which allowed the Mass State Troopers occupying the Air Wing to find Mr. Than, grab him, and pull him out of the river.  *Id.*, at 6-7.

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), quoting Fed. R. Civ. P. 8(a)(2).

## **ARGUMENT**

I.    The Court should dismiss Plaintiff's constitutional deprivation of rights claims (counts 13-18) brought under 42 U.S.C. § 1983 and M.G.L. c. 12, § 11I

   A.    Counts 17 and 18 should be dismissed because the Plaintiff has not plausibly alleged Defendant Officer John Doe 1 used excessive force against Mr. Harris

Beginning with Count 17 of Plaintiff's Complaint, Plaintiff's sole deprivation of constitutional rights claim under 42 U.S.C. § 1983 [4] – that Officer John Doe 1 used "unreasonable" force in violation of the Fourth Amendment's prohibition against unreasonable seizures [5] – is facially deficient because Mr. Harris was not "seized" by Officer John Doe 1 during the foot pursuit, let alone *unreasonably* seized.

First, Mr. Harris was not "seized" as defined by the Fourth Amendment to the United States Constitution because he was not *physically* stopped during the pursuit by Officer John Doe 1. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991) (Scalia, J.) (holding suspect who flees from police before he's placed under arrest in not "seized" within the meaning of the Fourth

---

[4] "A claim under § 1983 has two essential elements: [1] the defendant must have acted under color of state law, and [2] his or her conduct must have deprived the plaintiff of rights secured by the [United States] Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008).

[5] The Plaintiff does not allege any other constitutional provisions were violated by the City or the City's Doe Defendant. For example, the Plaintiff does not allege that the City violated Harris' substantive due process right to life or bodily integrity. Nor could she. The United States Supreme Court has held that such claims could survive only if Mr. Harris' death was caused (1) "through deliberate or reckless indifference to life," (2) with a "purpose to cause harm unrelated to the legitimate object of arrest," and (3) where the officer's conduct is "shocking to the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998) (Souter, J.). Plaintiff comes nowhere close to pleading any of that that occurred here.

Amendment until the suspect is physically stopped by police). As alleged in the Complaint, Mr. Harris fled from the police and either accidentally or voluntarily entered the Concord River before he could be placed into physical custody.

Second, Mr. Harris's accidental or intentional entry into the Concord River "involved neither physical contact with a police officer nor police action directed at h[im]." *Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir. 1996), *cert. denied*, 520 U.S. 1210 (1997), citing *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) (distinguishing between police action directed toward producing a particular result and police action that happens to cause an unintended, if foreseeable result and holding that only the former can constitute a seizure).

For those reasons, Mr. Harris' accidental drowning in the Concord River "was not a seizure and it was therefore not in derogation of h[is] Fourth Amendment rights." *Evans*, supra, 100 F.3d at 1036.

Nor can Plaintiff prevail in alleging Officer John Doe 1 violated Mr. Harris' rights secured by the Massachusetts Declaration of Rights. In count 18 of the Plaintiff's Complaint, Plaintiff asserts a claim against Officer John Doe 1 under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11H and 11I ("the MCRA"). Section 11I provides in relevant part:

> Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, ***or of rights secured by the constitution or laws of the commonwealth***, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for ... the award of compensatory money damages.

*See* M.G.L. c. 12, § 11I (emphasis added). To establish a claim under the MCRA, the Plaintiff must prove that: "(1) ***their exercise or enjoyment of rights secured by the Constitution*** or laws of either the United States or ***of the Commonwealth***, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats,

intimidation or coercion." *Swanset Development Corp. V. City of Taunton*, 423 Mass. 390, 395 (1996) (emphasis added).

For the same reasons discussed above, Plaintiff cannot establish under the MCRA that the City interfered with Mr. Harris' federal Fourth Amendment rights to be free from unreasonable seizures because Mr. Harris was not "seized" as defined by federal precedent. *See Hodari D.*, supra, 499 U.S. at 624 (Scalia, J.). However, Plaintiff also claims under the MCRA a violation of the Massachusetts *State* Constitution.[6] *See* ECF No. 1, p. 15. And the Supreme Judicial Court concluded "a person is seized, for purposes of [Article 14 of the Massachusetts Declaration of Rights], when a police officer initiates a pursuit with the obvious intent of requiring the person to submit to questioning", explicitly rejecting Justice Scalia's analysis in *Hodari D. See Com. v. Stoute*, 422 Mass. 782, 782, 784–88 (1996).[7] Put another way, the SJC recognized that Article 14 "provides more substantive protection to a person than does the Fourth Amendment in defining the moment at which a person's personal liberty has been significantly restrained by the police, so that he may be said to have been 'seized[.]'" *Id.*, at 785.

Even if Mr. Harris' foot pursuit constituted a seizure under Article 14 of the Massachusetts Declaration of Rights, the Complaint fails to plausibly allege Officer John Doe 1's seizure was "unreasonable" or amounted to excessive force.

---

[6] The Plaintiff does not specify which specific Article of the Massachusetts Declaration of Rights he contends was violated by Officer John Doe 1. *See* ECF No. 1, p. 15. In reading the Complaint in context, the City construes count 18 to say that Mr. Harris' Article 14 right to be free from unreasonable searches and seizures was violated.

[7] Because section 1983 only protects against the deprivation "of rights secured by the ***[United States] Constitution or by federal law***" and not deprivations of ***state*** constitutional rights, *see Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir. 1996), *cert. denied*, 520 U.S. 1210 (1997), the SJC's decision in *Stoute* disagreeing with *Hodari D.* does not make Plaintiff's *federal* § 1983 claim against Officer John Doe 1 (count 17) viable.

To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances... Whether the force used to effect a particular seizure is reasonable must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight... The reasonableness inquiry is objective, to be determined in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation... ***There must be careful attention to the facts and circumstances of each particular case, including*** the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or ***attempting to evade arrest by flight***.

*Jennings v. Jones*, 499 F.3d 2, 10 (1st Cir. 2007) (citations omitted; internal quotation marks omitted), citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

Most importantly, the Complaint does not allege that Officer John Doe 1 used **_any_** force against Mr. Harris. All that is alleged in Plaintiff's Complaint is that (1) Mr. Harris, unprompted, exited his vehicle and began approaching Officer John Doe 1, (2) Officer John Doe 1, perceiving Harris to be a threat, withdrew his taser and displayed lasers on the ground in front of Harris, (3) Mr. Harris ran from Officer John Doe 1 through a construction zone occupied along the Concord River, (4) Officer John Doe 1 "followed closely behind" Mr. Harris, (5) "[d]ue to Officer John Doe 1's actions," Mr. Harris "ended up in the Concord River," and (6) after Officer John Doe 1 chased Mr. Harris to the bank of the Concord River, he informed LPD dispatch Mr. Harris was in the Concord River. The Complaint does not allege, either factually or upon Plaintiff's information or belief, that Officer John Doe 1 pushed Mr. Harris into the Concord River, or even physically touched Mr. Harris.

For the above reasons, this Court should dismiss counts 17 (excessive force under 42 U.S.C. § 1983) and 18 (excessive force under M.G.L. c. 12, § 11I).

      B. Officer John Doe 1 is entitled to qualified immunity as to Counts 13, 17, and 18 because even if Harris' Fourth Amendment rights were violated, such a constitutional violation was not clearly established as unconstitutional at the time

At a minimum – even if Plaintiff *could* plausibly allege a violation of Harris' constitutional rights – Officer John Doe 1 is entitled to qualified immunity. Officer John Doe 1's conduct did not violate any fairly analogous precedent establishing that his or her conduct violated Harris's right to be free from unreasonable seizures.

"Qualified immunity is a doctrine that shelters government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017) (internal quotation marks omitted), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Put another way, qualified immunity, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Courts long have recognized that qualified immunity consists of both an immunity from suit and an immunity from damages... Thus, claims of qualified immunity ought to be resolved at the earliest practicable time." *McKenney*, supra, 873 F.3d at 80 (citation omitted).

Here, the Plaintiff cannot demonstrate that "by the time in question, there was fairly analogous precedents establishing that [Officer John Doe 1's] conduct violated [Harris'] Fourth Amendment right to be free from unreasonable seizures." *Horta v. Sullivan*, 4 F.3d 2, 13 (1st Cir. 1993). The undersigned counsel is unaware of any authority holding that Officer John Doe 1's conduct constituted an unreasonable seizure or excessive force. Especially where the Complaint does not allege Officer John Doe 1 discharged his weapon or made any physical contact with

Harris. For that reason, the Court should find that Officer John Doe 1 is entitled to qualified immunity and dismiss count 13 (deliberate indifference under § 1983) as to Officer John Doe 1, count 17 (excessive force under § 1983), & count 18 (excessive force under § 11I).

C. Counts 13-16 should be dismissed because Plaintiff has not plausibly alleged the City, as a municipality, is liable under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978)

At the outset, as discussed above in Part I(A) of this Memorandum, the Plaintiff has not plausibly alleged that Officer John Doe 1 deprived Mr. Harris' constitutional rights. Because Officer John Doe 1 did not violate Harris' federally protected rights, Plaintiff's § 1983 claims against the City, counts 13-16, must be dismissed. *See Leavitt v. Correctional Medical Services, Inc.*, 645 F.3d 484, 504 (1st Cir. 2011) ("Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom"), citing *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010) ("*Monell* can impose municipal liability only for underlying, identifiable constitutional violations"); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point" (emphasis in original)).

Even if Officer John Doe 1 *had* violated Harris' right to be free from unreasonable seizures, Plaintiff has not plausibly alleged municipal liability under the United States Supreme Court's decision in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). In *Monell*, the United States Supreme Court determined in what circumstances a municipality could be held liable for a deprivation of constitutional rights claims under 42 U.S.C. § 1983. The Court held that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or,

in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*, at 694. "Official municipal policy includes, among other things, the acts of [the municipality's] policymaking officials." *Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016), citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"[C]ourts have established two requirements for plaintiffs to meet in maintaining a § 1983 action grounded upon an unconstitutional municipal custom. First, the custom or practice ***must be attributable to the municipality***. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (emphasis added). Second, "***the custom must have been the cause*** of and the moving force behind the deprivation of constitutional rights." *Id.* (emphasis added).

Neither element has been plausibly alleged here. Where the Plaintiff alleges merely that other people have fallen in the Concord River and drowned, and nothing else – she has not plausibly alleged a "well settled," "widespread" policy or custom permitting the deprivation of constitutional rights.[8] *Cf. Bordanaro*, supra, 871 F.2d at 1156 (unconstitutional policy under

---

[8] The Plaintiff attempts to allege a municipal policy or custom through a WGBH interview with Lowell City Councilor John Leahy, the then-Mayor of the City of Lowell. As alleged in the Complaint, Mayor Leahy (1) said that the City's Doe Defendants "follow[ed] a standard protocol" during the search, and (2) "described a similar incident which occurred in Lowell from years prior during which a person 'fell in the river and they didn't find his body for six months.'" *See* ECF No. 1, p. 7-8. Plaintiff alleges that this meant the Doe Defendants acted "pursuant to" the "protocol in place" regarding the previous drowning. *Id.* This is not sufficient to establish

*Monell* where Police Department "had a longstanding, wide-spread, and facially unconstitutional practice of breaking down doors without a warrant when arresting a felon"). The Plaintiff has also not plausibly described how such a policy or custom was the "cause of" and "the moving force" behind the deprivation of constitutional rights. Finally, the Complaint does not plausibly allege any deliberate indifference on the part of any of the John Doe supervisors involved in the search of Mr. Harris. *See, e.g.*, *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) ("To succeed on a supervisory liability claim [under § 1983], a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission").

Nor can the Plaintiff bring a § 1983 *Monell* claim against the City for failure to train or supervise the City's Doe Defendants. Expanding on the Supreme Court's prior holding in *Monell*, in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989), the Court recognized that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for [municipal] liability under § 1983." *But see Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation that was the policy in *Monell*"). More specifically, the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, supra, 489 U.S. at 488. "Only

---

municipal liability under *Monell*. First, the statements by then-Mayor Leady allege, at most, that the City attempted to rescue Mr. Harris and did so in accordance with existing protocols in place, which resulted in a successful rescue of Raveth Than's in 2018, *see* ECF No. 1, p. 6, and a nonspecific, unsuccessful rescue which then-Mayor Leahy alluded to in his interview. *Id*., at 7-8. This is far cry from *Monell*'s legal standard requiring "widespread" "longstanding" municipal policies or customs which were the "cause of" and "moving force" behind a plaintiff's constitutional violations.

where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id*., at 389.

Here, Plaintiff cannot state a claim for municipal failure to train or supervise claim under section 1983 for two reasons. First, the plaintiff has failed to adequately plead deliberate indifference. "Inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, supra, 489 U.S. 388. For the same reasons discussed above, the Plaintiff has not plausibly alleged deliberate indifference on the part of the City of Lowell Police Department with respect to Mr. Harris' search. Second, the Plaintiff has failed to adequately plead any causal connection between any deficient training and the decedent's injuries. "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Harris*, supra, 489 U.S. at 391. Put another way, "[t]o prevail, the plaintiff must show that the constitutional violation had a 'direct causal link' to the deficiency in training." *Jones v. City of Boston*, 752 F.3d 38, 59 (1st Cir. 2014), citing *Harris*, supra, 489 U.S. at 385. The Complaint at hand does not plausibly allege what training, if any, the City failed to provide the Lowell Police Department which would have directly prevented Mr. Harris' drowning after he chose to flee from Officer John Doe 1.

For the above reasons, this Court should dismiss count 13 (deliberate indifference under § 1983), count 14 (*Monell* claim for official policy or custom), and count 15 (*Monell* claim for failure to train or supervise).

II.  <u>Plaintiff's common law and federal statutory conspiracy claims (counts 10-12) should be dismissed</u>

Next, the Plaintiff construes the events of December 19, 2020 as an elaborate civil rights conspiracy taking place between the Lowell Police Department, Lowell Fire Department,

Massachusetts State Troopers, and Massachusetts Environmental Police. *See* ECF No. 1, p. 12-13. But other than a barebones recitation of the legal elements for 42 U.S.C. § 1985(3) and common law civil conspiracy claims, the Complaint comes nowhere close to plausibly stating a claim upon which relief can be granted.

The Plaintiff brings three separate conspiracy claims against the City and the City's Doe Defendants. First, in count 10, the Plaintiff alleges that the Defendants engaged in a civil rights conspiracy under the Ku Klux Klan Act, 42 U.S.C. § 1985(3), by "engag[ing] in a common design or agreement" to "deprive Mr. Harris and/or Ms. Daddeh of the equal protection of the laws." *See* ECF No. 1, p. 12-13. Next, the Plaintiff alleges the City engaged in two types of common law civil conspiracies: (a) coercive common law conspiracy alleging that the Defendants "acted in unison with a peculiar power of coercion over Mr. Harris and Ms. Daddeh which they would not have had if they were acting individually" (count 11) and (b) a joint liability conspiracy alleging two or more of the City's Doe Defendants "engaged in a common design or agreement … to commit a wrongful act" (count 12). *See* ECF No. 1, p. 13. The City addresses each conspiracy claim in turn.

A. <u>Count 10 should be dismissed because the Complaint does not plausibly allege a civil conspiracy to deprive Harris' equal protection rights under 42 U.S.C. § 1985(3)</u>

"The civil-conspiracy prohibition contained in § 1985(3) was enacted as a significant part of the civil rights legislation passed in the aftermath of the Civil War." *Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017). Section 1985(3) provides in relevant part that:

> If two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws …, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may

have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*See* 42 U.S.C. § 1985(3). "The First Circuit has held that a claim under § 1985(3) must contain four elements. First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to a person or property, or a deprivation of a constitutionally protected right." *Perez-Sanchez v. Public Building Authority*, 531 F.3d 104, 107 (1st Cir. 2008). Here, as currently pled, the first three elements of § 1985(3) are not met.

First, the Plaintiff has not plausibly "allege[d] a conspiracy[.]" *Perez-Sanchez*, supra, 531 F.3d at 107. "Conspiracy requires an agreement – and in particular an agreement to do an unlawful act – between or among two or more separate persons." *Ziglar*, supra, 582 U.S. at 153. Here, other than "a formulaic recitation of the elements" in her Complaint; *Twombly*, supra, 550 U.S. at 555; that the "Defendants engaged in a common design or agreement express or otherwise, *see* ECF No. 1, p. 12-13, Plaintiff makes no effort to allege "well-pleaded facts" that would permit the Court to infer an "agreement to do an unlawful act." *Iqbal*, supra, 556 U.S. at 679; *Ziglar*, supra, 582 U.S.at 153. Plaintiff has merely "alleged," but has not "shown" an entitlement to relief on that element of § 1985(3). *Iqbal*, supra, 556 U.S. at 679.

Second, the Plaintiff has not alleged a "constitutional purpose to deprive the plaintiff of the equal protection of the laws"; *Perez-Sanchez*, supra, 531 F.3d at 107l; because the Plaintiff has not alleged any of the City's Doe Defendants exhibited discriminatory, class-based animus. In alleging a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws, the Supreme Court has held that this requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403

U.S. 88, 102 (1971). "The requirement that the discrimination be 'class-based' is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. Rather, the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) (internal quotation marks omitted). Here, the Complaint does not even attempt to describe any discriminatory or class-based animus that the Doe Defendants exhibited. "By not alleging discrimination against a distinctive, readily identifiable class of persons, the plaintiff has failed to state an actionable claim under § 1985(3)." *Aulson v. Blanchard*, 83 F.3d 1, 6 (1st Cir. 1996).

Third, the Plaintiff does not plausibly allege an overt act, by *any* of the City's Doe Defendants taken in furtherance of any conspiracy. "A complaint alleging violation of 42 U.S.C. § 1985 must allege with some degree of particularity the overt acts by the defendants which relate to the promotion of the conspiracy claimed." *Pleading overt acts in suits under 42 U.S.C.A. §§ 1985, 1986*, 6 Fed. Proc., L. Ed. § 11.379, citing *Grajales v. Puerto Rico Ports Authority*, 924 F.Supp.2d 374 (D. P.R. Feb. 21, 2013). Again, other than reciting the legal element in Plaintiff's complaint that "Defendants engaged in an overt act in furtherance" *see* ECF No. 1, p. 13, no well-pleaded facts specify what "overt act" Plaintiff contends was made to further the purported conspiracy to deprive Harris' equal protection clause rights.

For each of the above reasons, the Plaintiff has failed to adequately allege with well-pleaded facts a civil conspiracy to deprive civil rights under 42 U.S.C. § 1985(3). This Court should dismiss count 10 of the Plaintiff's Complaint as to the City of Lowell and the City's Doe Defendants.

B. Plaintiff's common law civil conspiracy claims (counts 11-12) should be dismissed because Plaintiff has not plausibly alleged a conspiracy occurred

In addition to the federal civil rights conspiracy claim under § 1985(3), Plaintiff alleges in counts 11 and 12 that the City of Lowell and the City's Doe Defendants engaged in *common law* civil conspiracy. But those claims do not withstand scrutiny either.

"Massachusetts law recognizes two distinct theories of liability under the umbrella term of 'civil conspiracy[.]'" *Greene v. Phillip Morris USA, Inc.*, 491 Mass. 866, 871 (2023). The first theory is "concerted action" conspiracy, and the second theory is "true conspiracy" which is "based on coconspirators exerting some peculiar power of coercion." *Id*. Counts 11 and 12 allege both theories occurred here.

The first theory of liability, "concerted action theory," is "akin to the theory of common law joint liability in tort." *Green*, supra, 491 Mass. at 871. This theory "applies to a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." *Id*.; *see also Kyte v. Philip Morris, Inc.*, 408 Mass. 162, 167 (1990) (conspiracy claim must fail where the "record shows that there was no common design or concerted action between Philip Morris and [retail seller of cigarettes]"). As for the second theory of liability, true conspiracy, "a plaintiff must show that two or more defendants acted in concert, and that there was some peculiar power of coercion of the plaintiff possessed by the defendants in combination with any individual standing in a like relation to the plaintiff would not have had." *Wodinsky v. Kettenbach*, 86 Mass. App. Ct. 825, 837 (2015). In addition, the "alleged conspirators" must have "agreed to accomplish an unlawful purpose or a lawful purpose by unlawful means[.]" *Greene*, supra, 491 Mass. at 875 n. 10.

Neither theory of common law civil conspiracy has been adequately pled here. At the outset, the Plaintiff has not alleged what *specific* tortious act she contends the Defendants

24

conspired to commit against Mr. Harris. Even if the Complaint *had* alleged a specific tortious act the purported "conspiracy" sought to accomplish, as noted above in Part II(A) of this Memorandum, the Complaint does not plausibly allege an agreement, expressly or impliedly, to commit a specific tort. Other than citing the barebone elements of conspiracy – that the Defendants acted "with a peculiar power of coercion" and "engaged in a common design or agreement" – the Complaint does not support those legal elements with any well-pleaded facts as required by *Ashcroft* and *Iqbal*.

In short, there is a dearth of well-pleaded facts supporting an inference that the City or the City's Doe Defendants participated in a common law civil conspiracy. For that reason, this Court should dismiss counts 11 and 12 of the Plaintiff's Complaint as to the City and the City's Doe Defendants.

III. Plaintiff's intentional torts claims (counts 3, 6, and 19) must be dismissed

    A. The City of Lowell is immune from liability for intentional torts (counts 3 and 6) under the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2

The Massachusetts Tort Claims Act ("MTCA") "abolished general sovereign immunity in Massachusetts while retaining the Commonwealth's immunity for certain stated types of actions." *Audette v. Com.*, 63 Mass. App. Ct. 727, 730 (2005). Under the MTCA, "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of employment, in the same manner and to the same extent as a private individual under like circumstances." *See* M.G.L. c. 258, § 2. However, under section 10(c), which sets forth a list of exclusions from section 2's liability provision, public employers, including the City of Lowell, are immune from "***any claim arising out of an intentional tort***, including assault, battery, false imprisonment, false arrest, [and] intentional mental distress[.]" *See* M.G.L. c. 258, § 10(c) *see*

*also Spring v. Geriatric Authy. Of Holyoke*, 394 Mass. 274, 285 (1985) (interpreting section 10(c) as follows: "public policy considerations lead us to decide today that public employers remain immune from intentional tort claims").

Here, because counts 3 and 6 "aris[e] out of an intentional tort," this Court should dismiss those claims as applied to the City of Lowell as a municipality. More specifically, count 3 alleges City willfully, wantonly, or recklessly caused Mr. Harris's wrongful death in violation of M.G.L. c. 229, § 2(2). Count 6 alleges the City intentionally or recklessly inflicted emotional distress as to both Mr. Harris and Ms. Daddeh (Mr. Harris' executor). "With respect to intentional torts, including intentional infliction of mental distress, claims against the public employer are barred, *see* M.G.L. c. 258, § 10(c), but may be asserted against the public employee in his individual capacity." *Parker v. Chief Justice for Admin. And Management of Trial Court*, 67 Mass. App. Ct. 174, 180 (2006). Although the City concedes that it is not immune from counts 3 and 6 to the extent the claims assert the City's employees were merely reckless;[9] *see id.* ("For purposes of G.L. c. 258, recklessness is considered negligent, rather than intentional, conduct"); counts 3 and 6 should be dismissed as to the City, as a public employer, to the extent the claims seek to recover for an employee's intentional, willful, or wanton conduct.

      B.   <u>The Plaintiff's assault and battery claim against Officer John Doe 1 (count 19) should be dismissed because Mr. Harris was not subjected to harmful or offensive contact or was placed in apprehension of an imminent battery</u>

Nothing in Plaintiff's Complaint plausibly alleges that Officer John Doe 1 assaulted or battered Harris during the December 19, 2020 incident. "The elements of the intentional tort of assault and battery are present when (1) a defendant acts intending to cause a harmful or offensive contact with the plaintiff, or an imminent apprehension of such contact; and (2) a

---

[9] That being said, for the reasons set forth in Part IV of this Memorandum, the Complaint does not state a claim for reckless wrongful death under M.G.L. c. 229, § 2(2).

harmful contact with the plaintiff directly or indirectly results." *Serrano ex rel. v. Mass. Dept. of Social Services*, 22 Mass. L. Rptr. 501, *12 (Mass. Super. Ct. May 8, 2007), citing Restatement (Second) of Torts § 13 (1965).

As for battery, other than the barebones allegation in count 19 that "[a] harmful or offensive contact of Mr. Harris directly or indirectly resulted" from John Doe 1's actions, *see* ECF No. 1, p. 16, the Complaint makes no meaningful attempt to describe what harmful contact, if any, was made against Mr. Harris.  Nowhere in the "Facts Alleged" section of the Plaintiff's Complaint is it alleged that Officer John Doe 1 made a harmful or offensive contact with Mr. Harris.

As for assault, the closest Plaintiff comes to alleging assault is in paragraph 24, wherein he alleges Officer John Doe 1, after observing Harris exit his vehicle and approach Officer John Doe 1, withdrew his taser and "displayed lasers on the ground in front of Mr. Harris."  *See* ECF No. 1, p. 4.  But in the context of a law enforcement officer who the complaint alleges was responding to a suspect believed to be experiencing symptoms of mental illness and who was allegedly involved in a crime, *see* id., at 3, withdrawing a taser and aiming it at the ground in front of Mr. Harris as a protective measure is not excessive force which would constitute civil assault.  "Massachusetts law allows for assault and battery claims against police officers ***who use excessive force in conducting an arrest***...  However, Massachusetts law also allows an officer to use reasonable force in conducting a lawful arrest: reasonable force is a valid defense to assault and battery...  Where a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, our determination of the reasonableness of the force used under § 1983 controls our determination of the reasonableness of the force used under the common law assault and battery claims."  *Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) (affirming jury's

verdict that officer committed civil assault and battery given the First Circuit's finding that the officer used excessive force).

Here, for the same reasons outlined in Part I(A) of this Memorandum, the Complaint does not plausibly allege that Officer John Doe 1 engaged in excessive force in violation of Mr. Harris' Fourth Amendment rights. Accordingly, the Complaint does not state a claim for assault or battery upon which relief can be granted; and count 19 should be dismissed.

     C.   <u>The Plaintiff's remaining intentional torts, counts 3 and 6, should be dismissed as to the City's Doe Defendants because the Complaint does not plausibly allege that any of the Defendants engaged in any intentional torts against Harris</u>

The Plaintiff's remaining intentional tort claims – brought against Officer John Doe 1 and the other various John Doe police officers, detectives, and firefighters who attempted to locate Mr. Harris unsuccessfully – are also inadequately pled and should be dismissed.

Count 3 alleges the City's Doe Defendants willfully, wantonly, and recklessly caused Mr. Harris' wrongful death under M.G.L. c. 229, § 2(2). *See* ECF No. 1, p. 9. "A person who … by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted … shall be liable in damages… Damages under this action shall be recovered in an action of tort by the executor or administrator of the deceased." *See* M.G.L. c. 229, § 2(2). The SJC has previously held that wrongful death claims under M.G.L. c. 229, § 2 are "derivative," rather than independent, meaning wrongful death claims are precluded "unless decedents could have brought an action for the injuries that caused their death." *GGNSC Administrative Services, LLC v. Schrader*, 484 Mass. 181, 189–91 (2020). Thus, if Plaintiff's Complaint does not plausibly allege the City's Doe Defendants engaged in an intentional tort, count 3 must be dismissed.

Count 6 alleges the City's Doe Defendants intentionally or recklessly inflicted emotional distress. *See* ECF No. 1, at 10. "To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Roman v. Trustees of Tufts College*, 461 Mass. 707, 717–18 (2012). "The elements of a cause of action for reckless infliction of emotional distress are the same as those for intentional infliction of emotional distress." *Bowman v. Heller*, 420 Mass. 517, 519 n. 2 (1995).

Here, the Complaint does not state a claim for either claim against any of the City's Doe Defendants. As to Officer John Doe 1, the officer alleged to have chased Mr. Harris, for the reasons stated above in Part I(B) of this Memorandum, the Complaint does not plausibly allege he committed commit assault and battery against Mr. Harris. Furthermore, for the reasons stated in Part I(A) of this Memorandum, the Complaint does not plausibly allege Officer John Doe 1 violated Mr. Harris's Fourth Amendment rights or used excessive force. As a result, it cannot be said that the Complaint alleges "extreme and outrageous conduct," *Roman*, supra, 461 Mass. 718, on Officer John Doe 1's part. *See, e.g.*, *Puopolo v. Weld*, 2001 WL 1525810, at *3 (Mass. Super. Ct. Sept. 17, 2001) ("this common law claim [of intentional infliction of emotional distress] cannot succeed in view of the dismissal on summary judgment of the constitutional claims").

As for the remaining Doe Defendants for the City, their liability is even more attenuated than Officer John Doe 1. The Complaint does not plausibly allege conduct with willful, wanton or reckless intent and does not allege intentional infliction of emotional distress. "Conduct

qualifies as extreme and outrageous only if it go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Polay v. McMahon*, 468 Mass. 379, 386 (2014) (internal quotation marks omitted) ("The standard for making a claim of intentional infliction of emotional distress is very high"). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." *Id.* With those principles in mind, the Complaint does not plausibly allege the City's other Doe Defendants did anything remotely constituting "extreme and outrageous conduct" against Mr. Harris.[10] The Complaint alleges that at approximately 2:15 a.m., the other Doe Defendants aided a search of "the area immediately surrounding" the Concord River "where [Mr. Harris] was last seen," and that after being unable to find Mr. Harris, they ended their search after two hours. *See* ECF No. 1, p. 6. At most, the allegations against the remaining City's Doe Defendants amount to ordinary negligence,[11] not intentional infliction of emotional distress or willful, wanton, or reckless conduct causing Mr. Harris' death.

For the reasons stated above, counts 3 and 6 should be dismissed as to all of the City's Doe Defendants.

IV.     <u>The Plaintiff's various negligence, gross negligence, and recklessness claims against the City and the City's Doe Defendants should be dismissed</u>

---

[10] The Complaint also alleges intentional and reckless infliction of emotional distress as to Ms. Daddeh, Mr. Harris's mother. Count 6 should be dismissed to the extent that it seeks to recover for Ms. Daddeh's emotional distress. Because Daddeh did not witness the accident on December 19, 2020, she cannot recover for intentional infliction of emotional distress. *See Anthony H. v. John G.*, 415 Mass. 196, 199 (1993) (adopting Restatement (Second) of Torts § 46(2) (1965), which requires plaintiffs in IIED claims "to be present at the time" of the defendant's misconduct).

[11] Which as discussed below in Part IV(A) of this Memorandum, the Doe Defendants are immune from under the MTCA. And, even if they were not, as explained below in Part IV(B) of this Memorandum, the Complaint does not even plausibly allege ordinary negligence.

A. The City's Doe Defendants, as public employees, are immune from Plaintiff's various negligence, gross negligence, and recklessness claims under the Massachusetts Tort Claims Act, M.G.L. c. 258, § 2

The City's Doe Defendants cannot be held individually liable for their negligent acts, if any, as a matter of law. That is because under the MTCA, "public employees who commit negligent or wrongful acts or omissions 'while acting within the scope of [their] office or employment' are immune from liability." *Berry v. Commerce Insurance Company*, 488 Mass. 633, 636 (2021). "Under Massachusetts law, public employees are immune from suit based on allegedly negligent conduct. Rather, liability for the negligent acts of a public employee committed within the scope of employment is visited upon the public employer, and not the employee." *Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238, 246 n. 9 (D. Mass. 2010) (Stearns, J.). The SJC has previously held that "a public employee *is* immune from a claim arising out of gross negligence" because a gross negligence claim "qualifies as a 'negligent or wrongful act or omission' under [M.G.L. c. 258,] § 2." *Monahan v. Town of Methuen*, 408 Mass. 381, 392 (1990). And "[f]or purposes of G.L. c. 258, recklessness is considered negligent, rather than intentional, conduct." *Parker*, supra, 67 Mass. App. Ct. at 180 (dismissing reckless infliction of emotional distress claim brought against public employees).

Applying those principles to the claims alleged in Plaintiff's Complaint, the City's Doe Defendants are immune as a matter of law from count 1 (common law negligent wrongful death), count 2 (negligent wrongful death under M.G.L. c. 229, § 2(1)), count 6 (intentional and reckless infliction of emotional distress) to the extent it alleges the Doe Defendants *recklessly* inflicted emotional distress, count 7 (negligent infliction of emotional distress), count 8 (negligence), and count 9 (gross negligence).

B. **Plaintiff's negligence, gross negligence, and recklessness claims against the City should be dismissed because (1) the City is immune under M.G.L. c. 258, § 10(j) and (2) the Complaint does not plausibly allege the City breached a legal duty to prevent Mr. Harris from voluntarily entering the Concord River on his own during a foot pursuit that Mr. Harris started**

The Plaintiff's negligence, gross negligence, and recklessness claims against the City are centered on the argument that Officer John Doe 1 and the City's other Doe Defendants negligently failed to rescue Mr. Harris and that this ultimately caused Mr. Harris' death. More specifically, Plaintiff's Complaint alleges that Officer John Doe 1 failed to act to stop Mr. Harris from entering the Concord River and faults the other Doe Defendants for not doing more to try and rescue Mr. Harris when the two-hour search began. This argument fails for two reasons. First, under the Massachusetts Tort Claims Act, the City is immune from tort claims "based on [a] … failure to act" where the City did not "originally cause[]" Mr. Harris' peril. *See* M.G.L. c. 258, § 10(j). Second, even if the MTCA did not preclude such claims, the Complaint does not plausibly allege any reasonable, prudent acts which would have prevented Mr. Harris' death.

First, under section 10(j) of the MTCA, the City is immune from liability for Plaintiff's various negligence, gross negligence, and recklessness claims because the claims are premised entirely on Officer John Doe 1 and the City's other Doe Defendants' failure to rescue Mr. Harris from the Concord River.[12] "Public employers shall be liable for injury … or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." *See* M.G.L. c. 258, § 2. However, the City's liability for such claims is limited by section 10 of the MTCA, which provides in relevant part:

---

[12] With one exception: count 16 alleges the City negligently trained or supervised the City's various Doe Defendants. For the same reasons outlined in Part I(C) of this Memorandum the Complaint does not plausibly allege a negligent failure to train or supervise Mr. Harris.

"The provisions of sections one to eight, inclusive, shall not apply to … **any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation**, including the violent or tortious conduct of a third person, which is **not originally caused by the public employee** or any other person acting on behalf of the public employer."[13] *See* M.G.L. c. 258, § 10(j) (emphasis added). Here, because Plaintiff's negligence claim is premised upon a public employee's failure to act, the City is immune from liability unless the harm was "originally caused" by Officer John Doe 1 or unless one of the exceptions to section 10(j) applied.

The Plaintiff's Complaint attempts to counteract section 10(j)'s exclusion for tort claims not "originally caused" by the City by alleging that "once Defendants intended to take Mr. Harris into custody and pursued him in order to do so, they owed a duty of care to Mr. Harris such that they were required to prevent Mr. Harris from experiencing serious bodily harm or death as a result of their custody or pursuit and to rescue him once he faced serious bodily harm or death as a result of their custody or pursuit." *See* ECF No. 1, p. 8. But contrary to Plaintiff's Argument, Harris was not "in custody" because he fled before he was physically stopped by Officer John Doe 1. See *California v. Hodari D.*, supra, 499 U.S. at 624 (holding suspect who flees from

---

[13] The MTCA includes four exceptions to section 10(j)'s failure-to-act exclusionary rule, including:

> (1) any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances…; and (2) any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention; and (3) any claim based on negligent maintenance of public property; (4) any claim by or on behalf of a patient for negligent medical or other therapeutic treatment received by the patient from a public employee."

*See* M.G.L. c. 258, § 10(j)(1)-(4). None of those exceptions apply to Plaintiff's Complaint here.

police before he's placed under arrest in not "seized" within the meaning of the Fourth Amendment until the suspect is physically stopped by police). And even if Mr. Harris were in custody at the moment of the foot pursuit, the Complaint alleges Mr. Harris chose to walk away from a lawful stop, chose to flee from Officer John Doe 1, and then either accidentally fell or voluntarily jumped into the Concord River. Officer John Doe 1, and in turn the City of Lowell, did not "originally cause[]" Plaintiff's injuries; *see* M.G.L. c. 258, § 10(j); and to the extent the Complaint alleges Officer John Doe 1 negligently failed to act, such a claim should be dismissed under § 10(j) of the MTCA.

Second, Plaintiff's Complaint does not plausibly allege *any* reasonable, prudent acts that Officer John Doe 1 should have taken to rescue Mr. Harris. The Complaint faults Officer John Doe 1 and the other Doe Defendants for "never enter[ing] the Concord River in an attempt to rescue Mr. Harris," *see* ECF No. 1, p. 5, yet the Complaint alleges that this incident occurred in the wintertime, on December 19, 2020. Based on the factual allegations in Plaintiff's Complaint, it appears that he is contending the City owed a duty to rescue based on Restatement (Second) of Torts § 314A(4), which provides in relevant part: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a … duty" "(a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." *See* Restatement (Second) of Torts, § 314A(1)(a)-(b), (4) (1965); *see also Slaven v. Salem*, 386 Mass. 885, 888 (1982) (citing with approval Restatement (Second) of Torts § 314A (1965)). However, the duty to rescue a plaintiff in custody is not an absolute. Comment (f) of § 314A clarifies that a defendant "is not required to take any action until he knows or has reason to know that the

plaintiff is endangered, or is ill or injured. ***He is not required to take any action beyond that which is reasonable under the circumstances.***" *See* Restatement (Second) of Torts § 314A, cmt. (f) (1965) (emphasis added); *see also* Prosser and Keaton on The Law of Torts, § 56, at 377 (5th ed. 1984) ("Where the duty to rescue is required, it is agreed that it calls for nothing more than reasonable care under the circumstances. The defendant is not liable when he neither knows nor should know of the unreasonable risk, nor of the illness or injury").

Here, had Officer John Doe 1 leapt into a frigid, frozen river without protective equipment, without being able to actually see Mr. Harris floating on the Concord River's surface, it would have been an action "beyond that which is reasonable under the circumstances." *See* Restatement (Second) of Torts § 314A, cmt. (f) (1965). At best, Officer John Doe 1 had a duty to protect Harris from physical injury and give first aid, not to perform a rescue in a manner that placed Officer John Doe 1 in peril (i.e., by leaping into a frozen river without supervision, without protective equipment, or without seeing Mr. Harris' precise location in the river). Thus, even if Plaintiff's negligence claim against the City were not exempted by § 10(j) of the MTCA, the Complaint does not plausibly allege a breach of the City's Doe Defendant's legal duty to act.

For the reasons stated above, this Court should dismiss count 1 (common law wrongful death), count 2 (negligent wrongful death under M.G.L. c. 229, § 2(1), count 7 (negligent infliction of emotional distress), count 8 (negligence), count 9 (gross negligence), and count 16 (failure to train or supervise under M.G.L. c. 258, § 2) as to the City.

V.    Plaintiff's derivative loss of consortium and pain and suffering claims (counts 4-5) should be dismissed because their underlying tort claims are legally insufficient and inadequately pled

Count 4, a separate loss of consortium claim brought by Ms. Daddeh, Mr. Harris' mother, in her individual capacity, should be dismissed. "The parents of a minor child or an

adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury." *See* M.G.L. c. 231, § 85X. "Consortium claims are derivative in nature, so [they] require[] an underlying tortious act." *Doe v. Dennis-Yarmouth Regional School District*, 578 F.Supp.3d 164, 183 (D. Mass. Jan. 4, 2022). Here, Ms. Daddeh's loss of consortium claim should be dismissed because as discussed in greater detail above, all of the underlying tort claims brought on behalf of Mr. Harris are either governed by the immunity provisions of the MTCA or are inadequately pled under *Ashcroft* and *Iqbal*. Count 4 should also be dismissed as to the City of Lowell because, as most decisions in the U.S. District Court for the District of Massachusetts have now since recognized, M.G.L. c. 231, § 85X "does not allow recovery from municipal defendants." *Doe v. Dennis Yarmouth Regional School District*, 578 F.Supp.3d 164, 183 (D. Mass. Jan. 4, 2022); *see also Harrington v. City of Attleboro*, 172 F.Supp.3d 337, 354–55 (D. Mass. 2016) (same); *Doe v. Bradshaw*, 2013 WL 5236110, at *14 (D. Mass. Sept. 16, 2013) (same).[14]

Next, count 5, which seeks "[p]ain and suffering under [sic] G.L. c. 229, § 6, against all Defendants[,]" *see* ECF No. 1, p. 10, should be dismissed because it is not a valid claim. In any wrongful death action "brought under [M.G.L. c. 229, § 2], damages may be recovered for conscious pain and suffering resulting from the same injury." *See* M.G.L. c. 229, § 6. Although the Plaintiff pleads physical pain and suffering as a separate count in her Complaint, "[s]ection 6 is remedial and relates merely to the form of procedure by which existing rights are to be enforced. ***It creates no new cause of action***." *Dermody v. Utley*, 328 Mass. 209, 211 (1952) (emphasis added), overruled on other grounds, *Gaudette v. Webb*, 362 Mass. 60, 64 n. 2 (1972).

---

[14] *But see Doe I v. City of Northampton*, 659 F.Supp.3d 122, 135–36 (D. Mass. March 6, 2023) (disagreeing with holdings in *Dennis Yarmouth*, *Harrington*, and *Bradshaw*).

Put another way, M.G.L. c. 229, § 2 permits Plaintiffs in wrongful death cases to seek conscious pain and suffering as a remedy on behalf of the tortiously injured decedent; but the statute does not create a separate cause of action for wrongful death. Accordingly, count 5 should be dismissed because it is not a viable claim; merely a permissible remedy Plaintiff can seek in the Complaint's prayer for relief. Alternatively, even if M.G.L. c. 229, § 2 created an independent action for wrongful death that could be pled as a separate claim, for the reasons stated previously in Parts III(B) and IV(B) of this Memorandum, the Plaintiff has not plausibly alleged wrongful death on either a negligence or a willful, wanton or recklessness theory.

For the above reasons Plaintiff's derivative claims, counts 4 and 5, should be dismissed.

## CONCLUSION

For the reasons stated herein, the Defendant City of Lowell respectfully requests that this Court GRANT the Defendant's motion to dismiss all claims for failure to state a claim against the Defendant City of Lowell, and John Does 1-5, & 10-11.

Respectfully submitted,

The Defendants,
By their attorneys,

**/s/ Michael M. Broderick**
Michael M. Broderick, Esq., First Assistant City Solicitor
BBO # 660652
mbroderick@lowellma.gov
Thomas G. Wood, Esq., Second Assistant City Solicitor
BBO # 707877
twood@lowellma.gov
City of Lowell Law Department
375 Merrimack Street, 3rd Floor
Lowell, MA 01852-5909
(978) 674-4050

Dated: March 12, 2024

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Thomas G. Wood, Assistant City Solicitor, hereby certify that on March 5, 2024, I conferred with counsel for the Plaintiff, Joshua O'Neil, Esq., and have attempted in good faith to resolve or narrow the issues presented in Defendants' Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## REQUEST FOR ORAL ARGUMENT

The Defendants, City of Lowell, Lowell Police Department Officers John Doe 1, 2, and 3, Lowell Fire Department Firefighters John Doe 4 and 5, and Lowell Police Department Defectives John Doe 10 and 11, respectfully submit that oral argument may assist the Court in resolving the above-captioned motion to dismiss the Plaintiff's Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, the foregoing document was filed electronically through the CM/ECF system and was served upon all registered participants in this case, as identified in the Notice of Electronic Filing (NEF).

**/s/ Thomas G. Wood**
Thomas G. Wood, Assistant City Solicitor