UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Louise Harris Daddeh, Personal Representative of the Estate of Moses Harris,<br>    *Plaintiff*,<br><br>v.<br><br>Commonwealth of Massachusetts, City of Lowell, Lowell Police Department Officers John Doe 1, John Doe 2, and John Doe 3, Lowell Fire Department Firefighters John Doe 4 and John Doe 5, Massachusetts State Troopers John Doe 6, John Doe 7, John Doe 8, and John Doe 9, Lowell Police Department Detectives John Doe 10 and John Doe 11, and Massachusetts Environmental Police Officers John Doe 12 and John Doe 13,<br>    *Defendants*. | Civil Action No. 1:23-CV-13116-GAO |

## LOWELL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT UNDER FED. R. CIV. P. 15(a)(2)

### INTRODUCTION

On September 18, 2024, this Court granted the Lowell Defendants' motion to dismiss Plaintiff Louise Harris Daddeh's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), reasoning that the Complaint did not "allege any affirmative acts by Officer Doe 1 that forced Mr. Harris into the river or prevented him from leaving the water." *See* ECF No. 29, p. 3. Ms. Daddeh did not appeal this Court's well-reasoned opinion, move to alter or amend the judgment under Fed. R. Civ. P. 59, or seek relief from judgment under Fed. R. Civ. P. 60. Instead, she now seeks leave to amend her dismissed Complaint under Fed. R. Civ. P. 15(a)(2), which Rule 15 does not permit.

In federal court, "once a judgment is entered," the "filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60." *See* C. Wright & A.

1

Miller, 6 Fed. Prac. & Proc. Civ. § 1489 (1971). If the rule were otherwise, it would let plaintiffs "pursue a case to judgment and then," once they lose, "reopen the case by amending their complaint to take account of the court's decision." *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983). Such a practice "should not be sanctioned" absent "compelling circumstances." *Id*. No compelling circumstances exist here.

Even if amendment after dismissal were allowed under the Federal Rules of Civil Procedure, Ms. Daddeh's proposed amendments are futile. Ms. Daddeh still does not plausibly allege a constitutional deprivation by Officer John Doe 1. And Ms. Daddeh's latest theory levied against the City of Lowell does not create a valid *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978) claim.

Finally, should this Court generously construe Ms. Daddeh's filing as a motion for relief from judgment under Fed. R. Civ. P. 60(b), this Court should maintain the judgment of dismissal. Rule 60 limits the circumstances by which a judgment can be reopened to six possible reasons. Relevant here, Ms. Daddeh does not identify any "excusable neglect" or "newly discovered evidence," or provide "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(1), (2) & (6).

For each of the above reasons, Daddeh's motion to amend should be denied.

## ARGUMENT

I. <u>Ms. Daddeh's motion to amend under Fed. R. Civ. P. 15(a)(2) should be denied</u>

Thirty (30) days after this Court dismissed the operative Complaint for failing to state a claim upon which relief can be granted, *see* ECF No. 29, Ms. Daddeh moves for "leave to file an amended complaint under Federal Rule of Civil Procedure 15(a)(2)." *See* ECF No. 31, p. 1. Generally, leave to amend should be freely given "when justice so requires." *See* Fed. R. Civ. P.

2

15(a)(2).  "Motions to amend will not be granted, however, if there has been undue delay, bad faith, or undue prejudice to the opposing party, or if the proposed amendment would be futile." *Elwell v. Correia*, 578 F.Supp.3d 259, 261 (D. N.H. Jan. 4, 2022).

Here, Ms. Daddeh's motion to amend should be denied because (1) motions to amend complaints are procedurally improper when a case is already dismissed with prejudice and final judgment has been entered; (2) Ms. Daddeh unduly delayed her filing – she waited ten months after she filed her original Complaint; and (3) the proposed amendments to Ms. Daddeh's Complaint are futile and would not survive another motion to dismiss.  The Lowell Defendants discuss each reason for denial in greater detail below.

>   A. <u>Ms. Daddeh's motion to amend the complaint is improper; the case has already been properly dismissed by this Court</u>

To begin, Ms. Daddeh's motion to amend her Complaint after dismissal and after the entry of final judgment is procedurally improper.  "Most courts" faced with a motion to amend under Rule 15(a)(2) have held that "once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60."  *See* C. Wright & A. Miller, 6 Fed. Prac. & Proc. Civ. § 1489 (1971).

The United States Court of Appeals for the First Circuit has consistently held that motions to amend filed after the case has been dismissed are improper.  *See, e.g.*, *James v. Watt*, 716 F.2d 71, 77–78 (1st Cir. 1982) ("plaintiffs waited until they lost their case as individuals before moving to include the tribe as plaintiff *and* they offered no reason to explain why they did not move to amend sooner.  Accordingly, their motion was properly denied"), *ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("This court expressly disproved a similar tactic in *James*, and we do so again"); *Fire and Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) ("We wish to discourage this practice of seeking leave to amend after

3

the case has been dismissed"); *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 628 (1st Cir. 2000) ("the district court had no power to allow an amendment to the complaint because there was no complaint left to amend").

As Chief Judge F. Dennis Saylor IV has previously stated, the "practice of waiting to amend a complaint until after the Court has ruled on a motion to dismiss" is both (1) "problematic," *Hampshire House Corporation v. Fireman's Fund Insurance Co.*, 557 F.Supp.3d 284 (D. Mass. Aug. 26, 2021), and (2) "troublesome, to say the least." *Ward v. Schaefer*, 2017 WL 5505405, at *7 (D. Mass. Nov. 16, 2017); *United States ex rel. Hargerty v. Cybertronics, Inc.*, 146 F.Supp.3d 337, 344 (D. Mass. Nov. 17, 2015) (same). And for good reason: holding otherwise "would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy of favoring finality of judgments and the expeditious termination of litigation." *See* C. Wright & A. Miller, 6 Fed. Prac. & Proc. Civ. § 1489 (1971). Since "the drafters of the rules included Rule 59(e) and 60(b) specifically to provide a mechanism for situations in which relief must be obtained after judgment," Ms. Daddeh's motion to amend construes Rule 15(a)'s "broad amendment policy" "in a manner that would render those provisions meaningless." *Id*.

In *ACA Financial Guaranty Corp. v. Advest, Inc.*, supra, 512 F.3d at 57, a group of plaintiffs argued, like Ms. Daddeh here, that (1) "they were entitled to wait and see if their amended complaint was rejected by the district court before being put to the costs of filing a second amended complaint" and (2) this process would "promote efficiency in the judicial system." The United States Court of Appeals for the First Circuit did not agree:

> ***Plaintiffs have it exactly backwards – their methodology would lead to delays, inefficiencies, and wasted work***. The plaintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint was adequate… Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint should the court hold the first amended complaint was insufficient. Such an

4

approach would impose unnecessary costs and inefficiencies on both the courts and party opponents.

*Id*. (emphasis added).  Having lost the motion to dismiss, Ms. Daddeh now seeks a second bite of the apple.  Ultimately, Ms. Daddeh's motion to amend is improper because once a case has been dismissed, the proper avenue for a plaintiff is to (1) appeal the judgment of dismissal to the First Circuit, (2) move to alter or amend a judgment under Rule 59, or (3) seek relief from judgment under Rule 60.  Since Ms. Daddeh failed to follow any of those steps, and instead seeks leave to amend her already dismissed-with-prejudice Complaint, her motion should be denied.

> B. Daddeh unduly delayed in moving to amend because she waited ten months after filing her original Complaint and more than seven months after the Lowell Defendants served their motion to dismiss outlining the Complaint's deficiencies

Setting aside the fact that the motion to amend is procedurally improper, Ms. Daddeh's motion should also be denied given her undue delay in moving to amend.  In the First Circuit, "undue delay in moving to amend, even standing alone, may be … an adequate reason [to deny a motion for leave to amend]."  *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014); *Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of a good reason for it, is enough to justify denying a motion for leave to amend").  When "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has [at the very least] the burden of showing some valid reason for h[er] neglect and delay." *In re Lombardo*, 755 F.3d 1 (1st Cir. 2014) (internal quotation marks omitted).  In assessing whether delay is undue, courts "take account of what the movant knew or should have known and what he did or should have done."  *Id*., at 3–4 (internal quotation marks omitted).

Here, "considerable time" elapsed between the filing of the original Complaint and Ms. Daddeh's motion to amend.  Ms. Daddeh filed her Complaint with this Court on December 18, 2023, exactly ten months before she sought leave to amend.  Ms. Daddeh "provided no

5

explanation" for the ten-month "delay between filing the complaint and seeking leave to amend." *In re Lombardo*, supra, 755 F.3d at *4.  Additionally, Ms. Daddeh waited to seek leave to amend more than **seven months** after the Lowell Defendants filed their motion to dismiss articulating a plethora of reasons the Complaint was deficient on March 12, 2024.  Ms. Daddeh was "put on notice of the deficiencies in the complaint by the [Lowell Defendants'] motion to dismiss.  If [Ms. Daddeh] had something relevant to add, [she] should have moved to add it then." *Fire and Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015).  Ms. Daddeh chose not to do so.

Finally, Daddeh's reliance on *Winfield v. Town of Andover*, 305 F. Supp. 3d 286 (D. Mass. 2018) is misplaced.  *See* ECF No. 32, p. 2.  In *Winfield*, the District Court dismissed some but not all claims in the Winnfields' pro se complaint with prejudice; but the remaining counts were dismissed *without* prejudice "with leave for the Winfields to file a motion for leave to amend within 30 days." *Winfield*, supra, 305 F.Supp.3d at 290.  The Winfields filed their motion to amend the complaint about a month after the District Court's 30-day window, but the District Court excused the delay because the Winfields asserted "their motion was delayed due to Ms. Winfield's injury by [the defendants'] assault that resulted in hospitalization." *Id.*, at 291.  The District Court decided it would "not deny the motion for leave to amend due to this delay because the reason may be valid and the delay of approximately one month is not considerable." *Id*.

*Winfield* is inapplicable.  Here, this Court properly dismissed all of Ms. Daddeh's claims **with prejudice**, entered final judgment, and opted not to give Ms. Daddeh the choice to file an amended Complaint.[1]  And Ms. Daddeh did not delay only for 30 days.  She delayed filing a motion to amend for over **ten months** after she filed her Complaint.

---

[1] A decision that was well within this Court's discretion.

Accordingly, Ms. Daddeh's motion to amend should be denied because she unduly delayed in filing the motion and has not provided any adequate explanation for the ten-month delay.

### C. Amendment would be futile because Daddeh's proposed Amended Complaint fails to state a claim upon which relief can be granted

Even if this Court's dismissal of the Complaint was not a procedural bar to Ms. Daddeh's motion to amend, her proposed amendments do not correct the multitude of reasons why she fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to amend "should not be granted when to do so would be futile." *Crowl v. M. Chin Realty Trust*, 607 F.Supp.2d 245 (D. Mass. Mar. 10, 2009). An amendment is "deemed futile when the proposed amended complaint would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id*.

The proposed Amended Complaint at issue here makes three substantive changes. First, the Amended Complaint dismisses all Lowell Defendants except for Officer John Doe 1 and the City of Lowell.[2] Second, Ms. Daddeh alleges for the first time that during the chase, Officer John Doe 1 used a taser on Mr. Harris, causing him to suffer an arrythmia and die. Third, Ms. Daddeh alleges the City of Lowell "cover[ed] up" the death through a litany of acts, such as: (1) refusing "to identify Defendant-Officer John Doe 1" by name; (2) "alter[ing]" surveillance footage owned by an apartment building, and (3) having a state medical examiner not employed by the City of Lowell falsely claim Mr. Harris drowned. *See* ECF No. 31-1, p. 4-9.

---

[2] There are parts of Ms. Daddeh's proposed Amended Complaint which purport to bring claims against the "John Doe Defendants" and the "Institutional Defendants." *See* ECF No. 31-1, p. 15-16. But given the Amended Complaint's case caption and the "Parties" section only list Officer John Doe 1 and the City of Lowell as defendants, *see* ECF No. 31-1, p. 1-2, the Lowell Defendants construe any references to the "John Doe Defendants" and "Institutional Defendants" as scrivener's errors left from Ms. Daddeh's original Complaint.

Ms. Daddeh's proposed Amended Complaint fails to state a claim upon which relief can be granted, for nearly all the same reasons stated in the Lowell Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).  *See generally* ECF No. 11.  Furthermore, the proposed Amended Complaint suffers from several new deficiencies which render her motion to amend futile, which are discussed in detail below.  Since the proposed Amended Complaint now only asserts claims against Officer John Doe 1 and the City of Lowell, the Lowell Defendants discuss the claims against each Defendant in turn.

>   1. <u>Ms. Daddeh's new allegations concerning Officer John Doe 1 do not create a viable cause of action because Officer John Doe 1 is entitled to qualified immunity</u>

When Ms. Daddeh originally filed her Complaint, she alleged that during the chase, Mr. Harris "ended up in the Concord River" and that Officer John Doe 1 failed to "enter[] the Concord River in an attempt to rescue Mr. Harris[.]"  *See* ECF No. 1, p. 4-5.  Having lost on that theory, Ms. Daddeh now shifts to a new one: that Officer John Doe 1 tased Mr. Harris to death.  In Ms. Daddeh's new telling, as Mr. Harris fled from Lowell PD to the "banks of the Concord River," Officer John Doe 1 "deployed his taser" into Mr. Harris' body.[3]  The taser caused Mr. Harris to have "an arrythmia" which "a short time later, caused cardiac arrest of Mr. Harris's heart, killing him."  *See* ECF No. 31-1, p. 4.  Ms. Daddeh's theory is meritless and, more importantly, does not state a claim.

At the outset, it is doubtful that Ms. Daddeh's new taser theory even amounts to a constitutional deprivation.  Whether an officer's force is excessive or reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime

---

[3] Ms. Daddeh does not specify whether the taser was deployed in dart mode or drive-stun mode. Tasers used on dart mode are "more powerful, albeit non-deadly, use of force than a Taser used in stun mode." *Riley v. Allandydy*, 2012 WL 5386566, at *10 (D. N.H. Aug. 24, 2012).

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or ***attempting to evade arrest by flight***." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added). "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 507 (6th Cir. 2012); *see also Gray v. Cummings*, 917 F.3d 1, 11 (1st Cir. 2019) (citing *Hagans* with approval). Similarly, other courts have held that "it's reasonable for officers to tase fleeing suspects."[4] *Brown v. Giles*, 95 F.4th 436, 439 (6th Cir. Mar. 5, 2024); *see also Strepka v. Jonsgaard*, 2011 WL 5569493, at *5 (D. Colo. Nov. 16, 2011) (holding it was reasonable use of force for officer to discharge taser on plaintiff since plaintiff "was attempting to evade by flight").

Having said that, this Court does not have to decide whether a constitutional deprivation occurred because Officer John Doe 1 is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009). Daddeh still does not demonstrate that "by the time in question, there were fairly analogous precedents establishing that [Officer John Doe 1's] conduct violated [Mr. Harris'] Fourth Amendment right to be free from unreasonable seizures." *Horta v. Sullivan*, 4 F.3d 2, 13 (1st Cir. 1993). More specifically, Ms. Daddeh cannot demonstrate that it was clearly established law that an officer uses excessive force by using a taser on a mentally ill suspect that is actively resisting arrest and fleeing from law enforcement. That is because the First Circuit has held officers confronted with that scenario do not use excessive force. *See Gray v. Cummings*,

---

[4] Ms. Daddeh may argue that Officer John Doe 1 could have subdued Mr. Harris using a different method than a taser. But reasonableness doesn't "turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983). Here, even assuming Officer John Doe 1 could have stopped Mr. Harris with a less severe technique, tasing him would have been reasonable, especially given the Complaint concedes Mr. Harris was suspected of committing a crime and actively resisted arrest by fleeing the scene. *See* ECF No. 31-1, p. 3-4.

supra, 917 F.3d at 11 (holding it is clearly established law that "a single use of the Taser in the drive-stun mode to quell a nonviolent, mentally ill individual who was resisting arrest, did not violate the Fourth Amendment"). The same remains true here. The Complaint alleges Officer John Doe 1 used a taser to quell Mr. Harris, an erratically acting suspect, who was resisting arrest by fleeing from law enforcement.

For the above reasons, Ms. Daddeh's new baseless taser theory is an equally implausible constitutional claim. The proposed Amended Complaint does not allege a constitutional deprivation and, even if it did, Officer John Doe 1 is entitled to qualified immunity.

> 2. Daddeh's new allegations concerning the City of Lowell still do not plausibly allege municipal liability under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978)

Since Daddeh does not plausibly allege personal liability against Officer John Doe 1, her civil rights claims against the City of Lowell necessarily fail. *See Leavitt v. Correctional Medical Services, Inc.*, 645 F.3d 484, 504 (1st Cir. 2011) ("Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom"). But even if her claims against Officer John Doe 1 were cognizable, none of the new allegations in Daddeh's proposed Amended Complaint rise to the level of a plausible municipal liability claim under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978).

In *Monell*, the United States Supreme Court determined in what circumstances a municipality could be held liable for a deprivation of constitutional rights claims under 42 U.S.C. § 1983. The Court held that "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.*, at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

10

*Id.*, at 694. "Official municipal policy includes, among other things, the acts of [the municipality's] policymaking officials." *Saldivar v. Racine*, 818 F.3d 14, 20 (1st Cir. 2016). "[C]ourts have established two requirements for plaintiffs to meet in maintaining a § 1983 action grounded upon an unconstitutional municipal custom. First, the custom or practice must be attributable to the municipality. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (emphasis added). Second, "the custom must have been the cause of and the moving force behind the deprivation of constitutional rights." *Id*.

Here, just like the original Complaint, Ms. Daddeh's proposed Amended Complaint fails to plausibly allege a well settled, widespread unconstitutional policy, custom, or practice that was the moving force behind a deprivation of constitutional rights. Simply saying "the magic words 'custom' and 'policy' does not mean that" Ms. Daddeh's Complaint "properly pleads municipal liability." *Allen v. York County Jail*, 2003 WL 221842, at *8 (D. Me. Jan. 30, 2003). The proposed Amended Complaint simply repeats the same facts that this Court already found were insufficient. More specifically, Ms. Daddeh allege a municipal policy or custom through a WGBH interview with John Leahy, the then-Mayor of the City of Lowell. As alleged in the Complaint, former Mayor Leahy (1) said that the Lowell Police Department "follow[ed] a standard protocol" during the search, and (2) "described a similar incident which occurred in Lowell from years prior during which a person 'fell in the river and they didn't find his body for six months.'" See ECF No. 31-1, p. 4. Ms. Daddeh alleges that this meant Leahy, as "the chief executive" of the City of Lowell,[5]

---

[5] Though not crucial to the outcome of Daddeh's municipal claims, former Mayor Leahy was not the "chief executive" of the City of Lowell. Since 1944, the City of Lowell has followed a Plan E form of government, codified in M.G.L. c. 43, §§ 93 to 116. *See* City of Lowell Charter, available

"knew of a protocol in place" that Officer John Doe 1 followed "in relation to Mr. Harris" and that former Mayor Leahy "knew the protocol had led to the death of a person other than Mr. Harris." *Id*. When faced with these same facts, this Court already found the original Complaint "does not sufficiently allege any identifiable misconduct … by the City of Lowell." *See* ECF No. 29, p. 4. This Court was sound in its initial reasoning, and it need not revisit its earlier decision.

Ms. Daddeh's other allegations of a City-wide cover-up do not affect the Court's analysis. She alleges, among other things, that the City of Lowell (1) "altered" surveillance video from an apartment building adjacent to the parking lot where the chase began "before [the footage] was released to Mr. Harris' family; (2) kept Ms. Daddeh's family away from Mr. Harris's body; (3) coerced a state medical examiner into "not follow[ing] the guidelines of the National Association of Medical Examiners" when performing Mr. Harris' autopsy and (4) "removed" a section "of one of Mr. Harris's legs" before the body was returned to the family. *See* ECF No. 31-1, p. 5, 6, & 8. All of the allegations set forth acts that took place ***after*** Officer John Doe 1 purportedly violated Mr. Harris' Fourth and Fourteenth Amendment rights and, as a result, none of them served as the "cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). And none of the above allegations set forth a "pattern of similar constitutional violations." *Aprileo v. Clapprood*, 2024 WL 3430855, at *9 (D. Mass. May 21, 2024), citing *Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). A single alleged incident of a constitutional deprivation is "insufficient, in and of itself, to establish a municipal custom or usage' within the meaning of *Monell*." *Mahan v. Plymouth Cty.*

---

at https://ecode360.com/12360674#12360674 (last visited Oct. 22, 2024). For municipalities like Lowell that follow Plan E forms of government, **it is the City Manager, not the Mayor**, that acts as a chief executive for the City of Lowell. *See* M.G.L. c. 43, § 103. Mayors are considered the "official head of the city" but only for "ceremonial purposes." *See* M.G.L. c. 43, § 100.

*House of Corr.*, 64 F.3d 14, 16–17 (1st Cir. 1995). The fact remains that Ms. Daddeh still does not plausibly allege with any degree of specificity an unconstitutional policy, custom, or practice which was the cause of and moving force behind Mr. Harris' death.

Ms. Daddeh's failure to train or supervise claims against the City of Lowell (counts 15-16) are equally deficient. Those claims are supported entirely on the conclusory allegation that Officer John Doe 1 "was not properly trained or supervised in the use of force – specifically, tasers – on individuals in police custody."[6] *See* ECF No. 31-1, p. 5. Nothing more is pled beyond that barebones assertion. Ms. Daddeh "has not pled any facts that suggest municipal decisionmakers either knew or should have known that the training of officers was inadequate, or that the City's failure to train led to the asserted constitutional deprivation." *Aaron v. City of Lowell*, 2022 WL 2953033, at *3 (D. Mass. July 26, 2022).

For the reasons discussed above and outlined previously in the Lowell Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's operative Complaint, *see* ECF No. 11, p. 17-20, this Court should find that Ms. Daddeh's municipal liability claims premised on *Monell* are futile and deny the motion to amend as to the City of Lowell.

II. <u>Alternatively, should this Court construe Plaintiff's filing as a motion for relief from judgment under Fed. R. Civ. P. 60(b), the motion should still be denied because Ms. Daddeh has not proffered any "excusable neglect," "newly discovered evidence," or "any other reason that justifies relief"</u>

Finally, even if this Court were to construe Ms. Daddeh's motion to amend as a motion for relief from judgment under Fed. R. Civ. P. 60(b), her motion should be denied because Ms. Daddeh

---

[6] And Ms. Daddeh's allegation that Mr. Harris was "in police custody" before he was purportedly tased misstates the law. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991) (Scalia, J.) (holding a suspect who flees from police before he's placed under arrest in not "seized" within the meaning of the Fourth Amendment until the suspect is physically stopped by police or acquiesces to their authority).

has not proffered any grounds that justify relief.  Rule 60(b) of the Federal Rules of Civil Procedure provides that on motion and just terms, a District Court may relieve a party from a final judgment or order for any of the following reasons:

   (1) mistake, inadvertence, surprise, or excusable neglect;

   (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

   (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

   (4) the judgment is void;

   (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

   (6) any other reason that justifies relief.

*See* Fed. R. Civ. P. 60.  "Relief under Rule 60(b) is extraordinary in nature and … motions invoking that rule should be granted sparingly."  *Giroux v. FNMA*, 810 F.3d 103, 106 (1st Cir. 2016). Relevant here, Ms. Daddeh does not identify any "excusable neglect" or "newly discovered evidence," or provide "any other reason that justifies relief."  *See* Fed. R. Civ. P. 60(b)(1), (2) & (6).

First, there was no excusable neglect.  "Demonstrating excusable neglect is a demanding standard."  *Santos-Santos v. Torres-Centeno*, 842 F.3d 163 (1st Cir. 2016) (internal quotation marks omitted).  A party's excusable neglect allows the court, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances **beyond the party's control**."  *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 388 (1993) (emphasis added).[7]  "Ignorance of the rules, or mistakes construing the rules, do not

---

[7] Although *Pioneer* defined "excusable neglect" in the context of Bankruptcy Code Rule 9006(b)(1), the Supreme Court recognized the Bankruptcy Code's excusable neglect definition

14

usually constitute 'excusable neglect.'" *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004). Here, Ms. Daddeh does not proffer any intervening circumstances that were beyond her control. Ms. Daddeh could have sought to include the new factual allegations before the case was dismissed but chose not to do so.

Second, Ms. Daddeh does not allege any "newly discovered evidence that, with reasonable diligence, could not have been discovered in time[.]" *See* Fed. R. Civ. P. 60(b)(2). All of the new information or evidence Ms. Daddeh now proffers were available to her when the Defendants served their Motion to Dismiss the original Complaint. Rule 15(a)(1)(B) allows a party to amend as a matter of right, without leave of court, within 21 days after a responsive pleading is served. Ms. Daddeh could have done so here; including all of the information now in her proposed Amended Complaint. She chose not to do so, strategically waiting until the District Court ruled on the Motion to Dismiss.

Finally, there are no other reasons that would justify relief. Rule 60(b)(6) is a "catch-all provision" that "authorizes the district court to grant relief from judgment for 'any other reason hat justifies relief.'" *Giroux v. Federal Nat. Mortg. Ass'n*, 810 F.3d 103 (1st Cir. 2016), quoting Fed. R. Civ. P. 60(b)(6). But Rule 60(b)(6) is "only appropriate when none of the five subsections pertain[.]" *Simon v. Navon*, 116 F.3d 1, 5 (1st Cir. 1997). For all of the reasons outlined above, Ms. Daddeh does not state any extraordinary circumstances that fall outside of the first five subsections.

---

parallelled Rule 60(b)'s definition in the Federal Rules of Civil Procedure. *See Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 64 n. 9 (1st Cir.2001), citing *Pioneer*, supra, 507 U.S. at 393.

**CONCLUSION**

For the reasons set forth above, the Lowell Defendants respectfully request that this Court DENY the Plaintiff's Motion for Leave to File an Amended Complaint under Fed. R. Civ. P. 15(a)(2). Alternatively, should this Court construe Plaintiff's filing as a motion for relief from judgment, the Lowell Defendants respectfully request that this Court DENY such a request.

> Respectfully submitted,
> The Lowell Defendants,
> By their attorneys,
>
> **/s/ Michael D. Broderick**
> Michael D. Broderick, Esq., First Assistant City Solicitor
> BBO # 660652
> mbroderick@lowellma.gov
> Thomas G. Wood, Esq., Second Assistant City Solicitor
> BBO # 707877
> twood@lowellma.gov
> City of Lowell Law Department
> 375 Merrimack Street, 3rd Floor
> Lowell, MA 01852-5909
> (978) 674-4050

Dated: October 23, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2024, the foregoing document was filed electronically through the CM/ECF system and was served upon all registered participants in this case, as identified in the Notice of Electronic Filing (NEF).

> **/s/ Thomas G. Wood**
> Thomas G. Wood, Esq., Second Assistant City Solicitor